UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

JOSEPH A. CRUM,

               Plaintiff,

v.                                           9:06-CV-0586
                                           (DNH/GHL)
SCOTT DODRILL, Regional Director, Federal BOP;
CHRISTINE SULLIVAN, Unit Manager, FCI Ray Brook;
D. RYAN, Disciplinary Hearing Officer, FCI Ray Brook,

               Defendants.
_____

APPEARANCES:                            OF COUNSEL:

JOSEPH ANTHONY CRUM, 31353-037
  Plaintiff, *Pro Se*
FCC Forrest City, Medium
P.O. Box 3000
Forrest City, AR 72336

HON. GLENN T. SUDDABY                   BARBARA D. COTTRELL, ESQ.
United States Attorney                       Assistant United States Attorney
  for the Northern District of New York
James T. Foley U.S. Courthouse
445 Broadway, Room 218
Albany, NY 12207

GEORGE H. LOWE, United States Magistrate Judge

## **REPORT-RECOMMENDATION**

      This *pro se* prisoner civil rights action, commenced pursuant to *Bivens v. Six Unknown*

*Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), has been referred to me for Report

and Recommendation by the Honorable David N. Hurd, United States District Judge, pursuant to

28 U.S.C. § 636(b) and Local Rule 72.3(c) of the Local Rules of Practice for this Court.

Generally, Plaintiff Joseph Anthony Crum ("Plaintiff") alleges that, while he was incarcerated at

the Federal Correctional Institution at Ray Brook ("FCI Ray Brook"), three employees of the

Federal Bureau of Prisons ("BOP")–BOP Regional Director Scott Dodrill, FCI Ray Brook Unit

Manager Christine Sullivan, and FCI Ray Brook Disciplinary Hearing Officer D. Ryan

("Defendants")–violated his due process rights under the United States Constitution when,

between June 20, 2005, and June 27, 2005, they committed misconduct during two disciplinary

hearings to which Plaintiff was subjected for allegedly assaulting another prisoner on March 20,

2005. (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

 Currently pending before the Court is Defendants' motion to dismiss for failure to state a

claim upon which relief might be granted pursuant to Fed. R. Civ. P. 12(b)(6), or, in the

alternative, motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 13.)  For the

reasons that follow, I recommend that Defendants' motion be granted.

## I. BACKGROUND

### A. Summary of Plaintiff's Complaint

 Liberally construed, Plaintiff's Complaint (Dkt. No. 1) alleges as follows.

 On March 20, 2005, at 4:20 p.m., Plaintiff was interviewed, strip searched, and

photographed in a lieutenant's office at FCI Ray Brook as part of an investigation into whether he

was involved in the assault of another inmate.  During this time, prison officials failed to

discover "bruises, scars or visible wounds of any kind that would implicate plaintiff" in the

assault in question.  Plaintiff was then handcuffed and sent to the Facility's Medical Unit for

further examination.  After Plaintiff had waited for thirty minutes in handcuffs, a physician's

assistant examined Plaintiff and noted redness on Plaintiff's knuckles.  Plaintiff told the

physician's assistant that the redness was due to the tightness of the restraints that he had been

wearing.  Plaintiff was then placed in the Facility's Special Housing Unit ("SHU") where he was "under investigation for approximately 89 days, before . . . [receiving] an Incident Report."

On June 17, 2005, Plaintiff received an Incident Report, charging him with having committed the assault in question.

On June 22, 2005, Plaintiff attended a Unit Disciplinary Committee ("UDC") Hearing regarding the assault charge.  During the UDC Hearing, according to Plaintiff, Defendant Sullivan "altered and falsified" the UDC Hearing Report in order to "disguise the untimel[iness] [of the] hearing" and "proceed [sic] the case against Plaintiff."  In addition, according to Plaintiff, Defendant Sullivan "decided the disposition of the case before the hearing took place by releasing the victim from SHU."  The stated UDC Hearing disposition was to refer the assault charge to a Disciplinary Hearing Officer ("DHO") for further hearing.

On June 27, 2005, Plaintiff attended a DHO Hearing conducted by Defendant Ryan. According to Plaintiff, when he attempted to point out how Defendant Sullivan falsified the UDC Hearing Report, Defendant Ryan failed to further address or investigate the matter.  In addition, according to Plaintiff, Defendant Ryan "deprived plaintiff the right of calling witnesses and presenting physical evidence" at the DHO Hearing "that would of [sic] corroborated [Plaintiff's] defense."  At the conclusion of the hearing, Defendant Ryan convicted Plaintiff of the assault offense with which he had been charged.

On July 22, 2005, Plaintiff appealed the DHO decision to Defendant Dodrill, who, according to Plaintiff, "failed to remedy a wrong after lear[n]ing of it through report or appeal, [and] by doing so he created or allowed a pol[i]cy under which the violation occurred and was grossly negligent in managing the subordinates who caused the wrong doing."

3

As a result of this misconduct, Plaintiff alleges that Defendants committed the following procedural due process violations: (1) Defendant Sullivan falsified hearing documents to hide the fact that Plaintiff's UDC Hearing was untimely; (2) Defendant Sullivan determined the results of Plaintiff's UDC Hearing before it had taken place; (3) Defendant Ryan did not allow Plaintiff to call witnesses or present documentary evidence at Plaintiff's DHO Hearing; and (4) Defendant Dodrill had knowledge of the aforementioned events and failed to remedy the situation, and/or allowed prison policies to be violated, and/or failed to properly supervise his subordinates.

As compensation for the constitutional violations resulting from these various instances of misconduct, Plaintiff seeks money damages in the amount of $250,000 (not including costs and fees), as well as the "expungement of [his] disciplinary record."  (*See generally* Dkt. No. 1 [Plf.'s Compl.].)

### B.      Summary of Defendants' Motion

Generally, Defendants' motion is based on two alternative grounds: a motion to dismiss for failure to state a claim upon which relief might be granted pursuant to Fed. R. Civ. P. 12(b)(6); and, in the alternative, a motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 13.)

More specifically, in their motion, Defendants argue that Plaintiff's Complaint should be dismissed for three reasons.  (Dkt. No. 13, Part 7, at 9-16 [Defs.' Memo. of Law].)  First, argue Defendants, Plaintiff's claims–the success of which imply the invalidity of his disciplinary conviction–are barred by *Heck v. Humphrey*; 512 U.S. 477 (1994), which requires that before such claims may succeed, there must have been an invalidation of his disciplinary conviction, which there has not been in this case (based on an analysis of either Plaintiff's factual allegations

4

under Fed. R. Civ. P. 12(b)(6), or the undisputed record evidence  Fed. R. Civ. P. 56).  Second,

argue Defendants, they are protected from liability as a matter of law by the doctrine of qualified

immunity (based on an analysis of the undisputed record evidence under Fed. R. Civ. P. 56).

Third, argue Defendants, Plaintiff's claims fail on the merits (based on an analysis of the

undisputed record evidence under Fed. R. Civ. P. 56) in two regards: (1) Plaintiff's UDC Hearing

was "held within three work[ing] days from the time [prison] staff became aware of the inmate's

involvement in the incident," as required by 28 C.F.R. § 541.15(b); and (2) Plaintiff's due

process rights to present witnesses and documentary evidence at his hearing were not violated

because he chose to proceed with the hearing without calling his previously requested witnesses

and without requesting the introduction of such documentary evidence.

## II.    GOVERNING LEGAL STANDARDS

### A.    Recently Clarified Legal Standard for Motions to Dismiss

Under Fed. R. Civ. P. 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may

move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed.

R. Civ. P. 12(b)(6).  It has long been understood that a defendant may base such a motion on

either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R.

Civ. P. 8(a)(2);[1] or (2) a challenge to the legal cognizability of the claim.[2]

_____

[1]      *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed.
2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the
sufficiency of the pleading under Rule 8(a)(2).") (citations omitted); *Princeton Indus., Inc. v.
Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the
formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P.
8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v.
Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests
the formal legal sufficiency of the complaint, determining whether the complaint has conformed
to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled

Rule 8(a)(2) requires that a pleading include "a short and plain statement of the claim

showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must

"give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests."[3] The purpose of this rule is to "facilitate a proper decision on the merits."[4] A complaint

that fails to comply with this rule "presents far too a heavy burden in terms of defendants' duty to

shape a comprehensive defense and provides no meaningful basis for the Court to assess the

_____

to relief.'").

[2]        *See  Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations
give respondent fair notice of what petitioner's claims are and the grounds upon which they rest.
. . . In addition, they state claims upon which relief could be granted under Title VII and the
ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction
between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a
plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187
(2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a
complaint when the plaintiff's allegation . . . fails as a matter of law.") (citation omitted); *Kittay
v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule
12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing
sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods.
Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require
plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under
Rule 12(b)(6)].") (citation omitted); *Util. Metal Research & Generac Power Sys.*, 02-CV-6205,
2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the
legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint
under Rule 8[a]); *accord, Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y.
2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y.
Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at
the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of
the claims).

[3]        *Dura Pharmaceuticals, Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that
the complaint failed to meet this test) (quoting *Conley*, 355 U.S. at 47); *see also Swierkiewicz*,
534 U.S. at 512 (quoting *Conley*, 355 U.S. at 47); *Leatherman v. Tarrant County Narcotics
Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) (quoting *Conley*, 355 U.S. at 47).

[4]        *See Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48).

sufficiency of [plaintiff's] claims."[5]

The Supreme Court has long characterized this pleading requirement under Fed. R. Civ. P. 8(a)(2) as "simplified" and "liberal," and has repeatedly rejected judicially established pleading requirements that exceed this liberal requirement.[6]  However, it is well established that even this liberal notice pleading standard "has its limits."[7]  As a result, several Supreme Court decisions, and Second Circuit decisions, exist holding that a pleading has failed to meet this liberal notice pleading standard.[8]

---

[5]     *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion).  Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's subsequent history.  *See, e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

[6]     *See, e.g.*, *Swierkiewicz*, 534 U.S. at 513-514 (noting that "Rule 8(a)(2)'s simplified pleading standard applies to all civil actions, with limited exceptions [including] averments of fraud or mistake.").

[7]     2 *Moore's Federal Practice* § 12.34[1][b] at 12-61 (3d ed. 2003).

[8]     *See, e.g.*, *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964-1974 (2007) (pleading did not meet Rule 8[a][2]'s liberal requirement), *accord*, *Dura Pharmaceuticals*, 125 S. Ct. at 1634-1635, *Christopher v. Harbury*, 536 U.S. 403, 416-422 (2002), *Freedom Holdings, Inc. v. Spitzer*, 357 F.3d 205, 234-235 (2d Cir. 2004), *Gmurzynska v. Hutton*, 355 F.3d 206, 208-209 (2d Cir. 2004).  Several unpublished decisions exist from the Second Circuit affirming the Rule 8(a)(2) dismissal of a complaint after *Swierkiewicz*.  *See, e.g.*, *Salvador v. Adirondack Park Agency of the State of N.Y.*, No. 01-7539, 2002 WL 741835, at *5 (2d Cir. Apr. 26, 2002) (affirming pre-*Swierkiewicz* decision from Northern District of New York interpreting Rule 8[a][2]).  Although these decisions are not themselves precedential authority, *see* Rules of the U.S. Court of Appeals for the Second Circuit, § 0.23, they appear to acknowledge the continued precedential effect, after *Swierkiewicz*, of certain cases from within the Second Circuit interpreting Rule 8(a)(2).  *See Khan v. Ashcroft*, 352 F.3d 521, 525 (2d Cir. 2003) (relying on summary affirmances because "they clearly acknowledge the continued precedential effect" of *Domond v. INS*, 244 F.3d 81 [2d Cir. 2001], after that case was "implicitly overruled by the Supreme Court" in *INS v. St. Cyr*, 533 U.S. 289 [2001]).

Most notably, in the recent decision of *Bell Atlantic Corporation v. Twombly*, the Supreme Court, in reversing an appellate decision holding that a complaint had stated a claim upon which relief could be granted, "retire[d]" the famous statement by the Court in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  127 S. Ct. 1955, 1968-69 (2007).[9]  Rather than turning on the conceivability of an actionable claim, the Court clarified, the Rule 8 standard turns on the "plausibility" of an actionable claim.  *Id*. at 1965-74.  More specifically, the Court held that, for a plaintiff's complaint to state a claim, his "[f]actual allegations must be enough to raise a right to relief above the speculative level [to a plausible level]" assuming, of course, that all the allegations in the complaint are true.  *Id*. at 1965 [citations omitted].  What this means, on a practical level, is that there must be "plausible grounds to infer [actionable conduct]," or, in other words, "enough fact to raise a reasonable expectation that discovery will reveal evidence of [actionable conduct]."  *Id*.[10]

Having said that, it should be emphasized that, "[i]n reviewing a complaint for dismissal

---

[9]        The Court in *Twombly* further explained: "The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been adequately stated, it may be supported by showing any set of facts consistent with the allegations in the complaint. . . . *Conley*, then, described the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Twombly*, 127 S. Ct. at 1969.

[10]        *Accord*, *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007) ("[W]e believe the [Supreme] Court [in *Bell Atlantic Corp. v. Twombly*] is . . . requiring a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") [emphasis in original].

under Fed. R. Civ. P. 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor."[11]  "This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se*."[12]  In other words, while all pleadings are to be construed liberally, *pro se* civil rights pleadings are to be construed with an *extra* degree of liberality.  For example, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider a plaintiff's papers in opposition to a defendant's motion to dismiss as effectively amending the allegations of the plaintiff's complaint, to the extent that those factual assertions are consistent with the allegations of the plaintiff's complaint.[13]  Moreover, "courts must construe *pro se* pleadings

---

[11]      *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (affirming grant of motion to dismiss) (citation omitted); *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

[12]      *Hernandez*, 18 F.3d at 136 (citation omitted); *see also Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) (citations omitted); *Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 619 (2d Cir. 1999) (citation omitted).

[13]      "Generally, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss.  However, the mandate to read the papers of *pro se* litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum."  *Gadson v. Goord,* 96-CV-7544, 1997 WL 714878, at *1, n. 2 (S.D.N.Y. Nov. 17, 1997) (citing, *inter alia, Gil v. Mooney*, 824 F.2d 192, 195 [2d Cir. 1987] [considering plaintiff's response affidavit on motion to dismiss]).  Stated another way, "in cases where a pro se plaintiff is faced with a motion to dismiss, it is appropriate for the court to consider materials outside the complaint to the extent they 'are consistent with the allegations in the complaint.'"  *Donhauser v. Goord*, 314 F. Supp.2d 119, 212 (N.D.N.Y. 2004) (considering factual allegations contained in plaintiff's opposition papers) (citations omitted), *vacated in part on other grounds*, 317 F. Supp.2d 160 (N.D.N.Y. 2004).  This authority is premised, not only on case law, but on Rule 15 of the Federal Rules of Civil Procedure, which permits a plaintiff, as a matter of right, to amend his complaint once at any time before the service of a responsive pleading–which a motion to dismiss is not.  *See Washington v. James*, 782 F.2d 1134, 1138-39 (2d Cir. 1986) (considering subsequent affidavit as amending *pro se* complaint, on motion to dismiss) (citations omitted).

broadly, and interpret them to raise the strongest arguments that they suggest."[14]  Furthermore, when addressing a *pro se* complaint, generally a district court "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated."[15]

However, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[16]  For example, an opportunity to amend should be denied where "the problem with [plaintiff's] causes of action is substantive" such that "[b]etter pleading will not cure it."[17]

_____

[14]      *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (finding that plaintiff's conclusory allegations of a due process violation were insufficient) (internal quotation and citation omitted).

[15]      *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citation omitted); *see also* Fed. R. Civ. P. 15(a) (leave to amend "shall be freely given when justice so requires").

[16]      *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord, Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.*, 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404, at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

[17]      *Cuoco*, 222 F.3d at 112 (finding that repleading would be futile) (citation omitted); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice.") (affirming, in part, dismissal of claim with prejudice) (citation omitted).

### B.      Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether a genuine issue of material fact exists, [18] the Court must resolve all ambiguities and draw all reasonable inferences against the moving party.[19]

However, when the moving party has met its initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial."[20]  The nonmoving party must do more than "rest upon the mere allegations . . . of the [plaintiff's] pleading" or "simply show that there is some metaphysical doubt as to the material facts."[21]  Rather, "[a] dispute regarding a material fact is

---

[18]      A fact is "material" only if it would have some effect on the outcome of the suit. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[19]      *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) [citation omitted]; *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir. 1990) [citation omitted].

[20]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading, but the [plaintiff's] response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the [plaintiff] does not so respond, summary judgment, if appropriate, shall be entered against the [plaintiff]."); *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87 (1986).

[21]      Fed. R. Civ. P. 56(e) ("When a motion for summary judgment is made [by a defendant] and supported as provided in this rule, the [plaintiff] may not rest upon the mere allegations . . . of the [plaintiff's] pleading . . . ."); *Matsushita*, 475 U.S. at 585-86; *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

*genuine* if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[22]

What this burden-shifting standard means when a plaintiff has failed to *properly* respond to a defendant's Rule 7.1 Statement of Material Facts is that the facts as set forth in that Rule 7.1 Statement will be accepted as true[23] to the extent that (1) those facts are supported by the evidence in the record,[24] and (2) the non-moving party, if he is proceeding *pro se*, has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment.[25]

Implied in the above-stated standard is the fact that a district court has no duty to perform an *independent* review of the record to find proof of a factual dispute, even if the non-movant is proceeding *pro se*.[26]  In the event the district court chooses to conduct such an independent

---

[22]     *Ross v. McGinnis*, 00-CV-0275, 2004 WL 1125177, at *8 (W.D.N.Y. Mar. 29, 2004) [internal quotations omitted] [emphasis added].

[23]     *See* N.D.N.Y. L.R. 7.1(a)(3) ("Any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party.") [emphasis in original].

[24]     *See Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 243 (2d Cir. 2004) ("[I]n determining whether the moving party has met [its] burden of showing the absence of a genuine issue for trial, the district court may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 Statement.  It must be satisfied that the citation to evidence in the record supports the assertion.") [internal quotation marks and citations omitted].

[25]     *See Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *cf.* N.D.N.Y. L.R. 56.2 (imposing on movant duty to provide such notice to *pro se* opponent).

[26]     *See Amnesty Am. v. Town of W. Hartford*, 288 F.3d 467, 470 (2d Cir. 2002) ("We agree with those circuits that have held that Fed. R. Civ. P. 56 does not impose an obligation on a district court to perform an independent review of the record to find proof of a factual dispute.") [citations omitted]; *accord, Lee v. Alfonso*, No. 04-1921, 2004 U.S. App. LEXIS 21432 (2d Cir.

review of the record, any affidavit submitted by the non-movant, in order to be sufficient to create a factual issue for purposes of a summary judgment motion, must, among other things, not be conclusory.[27]  (An affidavit is conclusory if, for example, its assertions lack any supporting evidence or are too general.)[28]  Finally, even where an affidavit is nonconclusory, it may be insufficient to create a factual issue where it is (1) "largely unsubstantiated by any other direct evidence" and (2) "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the

---

Oct. 14, 2004), *aff'g*, 97-CV-1741, 2004 U.S. Dist. LEXIS 20746, at *12-13 (N.D.N.Y. Feb. 10, 2004) (Scullin, J.) (granting motion for summary judgment); *Fox v. Amtrak*, 04-CV-1144, 2006 U.S. Dist. LEXIS 9147, at *1-4 (N.D.N.Y. Feb. 16, 2006) (McAvoy, J.) (granting motion for summary judgment); *Govan v. Campbell*, 289 F. Supp.2d 289, 295 (N.D.N.Y. Oct. 29, 2003) (Sharpe, M.J.) (granting motion for summary judgment); *Prestopnik v. Whelan*, 253 F. Supp.2d 369, 371-372 (N.D.N.Y. 2003) (Hurd, J.).

[27]     *See* Fed. R. Civ. P. 56(e) (requiring that non-movant "set forth specific facts showing that there is a genuine issue for trial"); *Patterson*, 375 F.3d at 219 (2d. Cir. 2004) ("Nor is a genuine issue created merely by the presentation of assertions [in an affidavit] that are conclusory.") [citations omitted]; *Applegate v. Top Assoc.*, 425 F.2d 92, 97 (2d Cir. 1970) (stating that the purpose of Rule 56[e] is to "prevent the exchange of affidavits on a motion for summary judgment from degenerating into mere elaboration of conclusory pleadings").

[28]     *See, e.g.*, *Bickerstaff v. Vassar Oil*, 196 F.3d 435, 452 (2d Cir. 1998) (McAvoy, C.J., sitting by designation) ("Statements [for example, those made in affidavits, deposition testimony or trial testimony] that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment.") [citations omitted]; *West-Fair Elec. Contractors v. Aetna Cas. & Sur.*, 78 F.3d 61, 63 (2d Cir. 1996) (rejecting affidavit's conclusory statements that, in essence, asserted merely that there was a dispute between the parties over the amount owed to the plaintiff under a contract); *Meiri v. Dacon*, 759 F.2d 989, 997 (2d Cir. 1985) (plaintiff's allegation that she "heard disparaging remarks about Jews, but, of course, don't ask me to pinpoint people, times or places. . . .  It's all around us" was conclusory and thus insufficient to satisfy the requirements of Rule 56[e]); *Applegate*, 425 F.2d at 97 ("[Plaintiff] has provided the court [through his affidavit] with the characters and plot line for a novel of intrigue rather than the concrete particulars which would entitle him to a trial.").

complaint."[29]

## III.   ANALYSIS

### A.   Whether Plaintiff's Claims Are Barred by *Heck v. Humphrey*

As stated above, as compensation for the constitutional violations resulting from the

various instances of misconduct arising from his improperly conducted disciplinary hearing,

Plaintiff seeks money damages in the amount of $250,000 (not including costs and fees), as well

as the "expungement of [his] disciplinary record."  (Dkt. No. 1, ¶ 9 [Plf.'s Compl.].)

Defendants argue that Plaintiff's claims should be dismissed under *Heck v. Humphrey*,

512 U.S. 477 (1994), because the success of his claims would imply the invalidity of his

disciplinary conviction, and there has been no invalidation of his disciplinary conviction (based

---

[29]   *See, e.g.*, *Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005) (affirming grant of summary judgment to defendants in part because plaintiff's testimony about an alleged assault by police officers was "largely unsubstantiated by any other direct evidence" and was "so replete with inconsistencies and improbabilities that no reasonable juror would undertake the suspension of disbelief necessary to credit the allegations made in the complaint") [citations and internal quotations omitted]; *Argus, Inc. v. Eastman Kodak Co.*, 801 F.2d 38, 45 (2d Cir. 1986) (affirming grant of summary judgment to defendants in part because plaintiffs' deposition testimony regarding an alleged defect in a camera product line was, although specific, "unsupported by documentary or other concrete evidence" and thus "simply not enough to create a genuine issue of fact in light of the evidence to the contrary"); *Allah v. Greiner*, 03-CV-3789, 2006 WL 357824, at *3-4 & n.7, 14, 16, 21 (S.D.N.Y. Feb. 15, 2006) (prisoner's verified complaint, which recounted specific statements by defendants that they were violating his rights, was conclusory and discredited by the evidence, and therefore insufficient to create issue of fact with regard to all but one of prisoner's claims, although verified complaint was sufficient to create issue of fact with regard to prisoner's claim of retaliation against one defendant because retaliatory act occurred on same day as plaintiff's grievance against that defendant, whose testimony was internally inconsistent and in conflict with other evidence); *Olle v. Columbia Univ.*, 332 F. Supp.2d 599, 612 (S.D.N.Y. 2004) (plaintiff's deposition testimony was insufficient evidence to oppose defendants' motion for summary judgment where that testimony recounted specific allegedly sexist remarks that "were either unsupported by admissible evidence or benign"), *aff'd*, 136 F. App'x 383 (2d Cir. 2005) (unreported decision, cited not as precedential authority but merely to show the case's subsequent history, in accordance with Second Circuit Local Rule § 0.23).

on an analysis of either Plaintiff's factual allegations under Fed. R. Civ. P. 12(b)(6), or the

undisputed record evidence  Fed. R. Civ. P. 56).  (Dkt. No. 13, Part 7, at 9-10 [Defs.' Memo. of

Law].)

Plaintiff responds that his disciplinary conviction has indeed been invalidated, namely,

"by the issuance of a writ of habeas corpus" by United States District Judge James F. McClure,

Jr., of the United States District Court for the Middle District of Pennsylvania, on April 11, 2006.

(Dkt. No. 20, Plf. Opp. Memo. of Law, at 5, citing Exhibit 1A Thereto, attaching *Crum v.*

*Lindsay*, 06-CV-0481, Order [M.D. Pa. filed Apr. 11, 2006] [McClure, J.].)  Plaintiff also

appears to argue that *Heck v. Humphrey* does not bar his claims because he is not challenging the

revocation of his good-time credits (nor is he challenging the imposition of his sentence of

disciplinary segregation).  (Dkt. No. 20, Plf. Opp. Memo. of Law, at 5.)

Defendants reply that Judge McClure's decision did not in any way invalidate Plaintiff's

disciplinary conviction but that the decision, in fact, dismissed Plaintiff's habeas corpus petition.

(Dkt. No. 21, Part 1, at 1-2 [Defs.' Reply Memo. of Law].)[30]  Defendants also reply that *Heck v.*

*Humphrey* does in fact bar Plaintiff's claims because (1) by seeking to recover money damages

for an unconstitutional conviction, he is premising his claim on the theory that his conviction was

invalid, which requires that it had previously been invalidated, for example, through a writ of

habeas corpus, and (2) by seeking the expungement of his disciplinary record, he is requesting,

among other things, the restoration of his good-time credits and the removal from his record of

---

[30]     Defendants note that, while United States Magistrate Judge Thomas M. Blewitt
observed that "Crum makes no claim for restoration of lost good time credits" in Plaintiff's
habeas corpus petition, Plaintiff's habeas corpus petition was an entirely different pleading than is
his Complaint in the current action.  (Dkt. No. 21, Part 1, at 2 [Defs.' Reply Memo. of Law].)

the imposition of his sentence of disciplinary segregation.  (*Id*. at 2-3.)

Plaintiff (whose sur-reply was accepted for filing, out of special solicitude to him)
responds with several interrelated arguments that are largely if not completely repetitive of his
earlier arguments.  (Dkt. No. 26, Plf.'s Sur-Reply Memo. of Law, at 1-2.)  The crux of Plaintiff's
sur-reply on this issue is that *Heck v. Humphrey* does not apply because Plaintiff "isn't claiming
. . . [that he was] deprived of good time credits without due process," and the prison disciplinary
sentence that he is challenging has had "no effect on the duration of [Plaintiff's] overall
confinement."  (*Id*.)

After carefully considering the parties' arguments, Plaintiff's Complaint, the available
record evidence, and the relevant law, I agree with Defendants in all respects for the reasons
stated in their motion papers.  In this action, Plaintiff seeks (in addition to money damages of
$250,000) "the expungement of [the disciplinary conviction and sentence from his] disciplinary
record."  (Dkt. No. 1, ¶ 9 [Plf.'s Compl.].)  The uncontroverted record evidence on Defendants'
motion for summary judgment establishes that Plaintiff's disciplinary record reflects, *inter alia*,
(1) his disciplinary conviction on June 27, 2005, for the offense of assault, and (2) his loss of 27
days good time credit as a result of that disciplinary conviction.[31]

When statutorily awarded "good-time credits" (also sometimes known as "diminution
credits") are taken away from a prisoner, his or her term of confinement is effectively lengthened;

---

[31]     (*Compare* Dkt. No. 13, Part 5, ¶ 38 [Defs.' Rule 7.1 Statement, asserting
referenced fact, and supporting that factual assertion with accurate citation to record] *with* Dkt.
No. 20, Plf.'s Rule 7.1 Response [not including any "Paragraph 38" whatsoever but including a
"Paragraph 29," which admitted the referenced factual assertion]; *see also* Dkt. No. 13, Part 4, at
11 [Ex. 1G to Ryan Decl., attaching Disciplinary Hearing Officer Report, showing sanction of,
*inter alia*, "[d]isallowance of 27 days GCT"].)

when good- time credits are restored, the prisoner's term of confinement is effectively

diminished.[32]  By seeking the expungement of the disciplinary conviction and sentence from his

disciplinary record (and thus the restoration of his good-time credits), Plaintiff is therefore

requiring a court ruling that implicates the length of his confinement, thus invoking the

favorable-termination pre-requisite of *Heck v. Humphrey*.[33]  In addition to being recognized by

the Supreme Court in *Edwards v. Balisok*, 520 U.S. 641 (1997),[34] this point of law has been

recognized by numerous lower federal courts.[35]  Indeed, several federal courts (including the

---

[32]      For example, under one such statute, "[A] prisoner who is serving a term of imprisonment of more than 1 year . . . may receive credit toward the service of the prisoner's sentence, beyond the time served, for up to 54 days at the end of each year of the prisoner's term of imprisonment . . . ."  18 U.S.C. § 3624(b)(1).  Under this statute, the Seventh Circuit has explained, "[T]he accumulation of good-time credit reduces the amount of time a prisoner will ultimately spend in prison . . . ."  *White v. Scibana*, 390 F.3d 997, 1001 (7th Cir. 2004).

[33]      I note that I agree with Defendants that it is irrelevant (for purposes of this action) that United States Magistrate Judge Thomas M. Blewitt noted that "Crum makes no claim for restoration of lost good time credits" in Plaintiff's habeas corpus petition, because Plaintiff's habeas corpus petition was an entirely different pleading than is his Complaint in the current action.  (Dkt. No. 21, Part 1, at 2 [Defs.' Reply Memo. of Law].)  For example, I have carefully read Plaintiff's habeas corpus petition (available on the Federal Judiciary's online PACER Service) and have found no request for an expungement of Plaintiff's disciplinary record–a request he expressly makes in his Complaint in this action.  *See Crum v. Lindsay*, 06-CV-0481, Petition (M.D. Pa. filed March 6, 2006).

[34]      *See Edwards v. Balisok*, 520 U.S. 641, 643-44, 647-48 (1997) (stating that "[t]his case presents the question [of] whether a claim for damages and declaratory relief brought by a state prisoner challenging the validity of the procedures used to deprive him of good-time credits is cognizable under § 1983," and answering the question in the negative, based in part on *Heck v. Humphrey*).

[35]      *See, e.g.*, *Davis v. Baughman*, No. 07-1581, 2008 U.S. App. LEXIS 2541, at *2-3 (8th Cir. Feb. 5, 2008) ("We agree with the district court that Davis's claims against Minor were barred under *Heck v. Humphrey* . . . because he had not successfully challenged his disciplinary conviction in state court, and a favorable decision would necessarily imply the invalidity of his resulting loss of good time credits and, hence, the length of his confinement.") [citation omitted], *accord, Sheldon v. Hundley*, 83 F.3d 231, 232-33 (8th Cir. 1996) (affirming district court ruling

17

Supreme Court) have specifically considered and rejected the creative argument, advanced by

Plaintiff, that his lost good-time credits would not be restored if he won the lawsuit because he

did not expressly request the restoration of good-time credits in his Complaint.[36]

Moreover, the Supreme Court (in *Edwards v. Balisok*) has rejected the related argument,

also advanced by Plaintiff, that the "claim posited that the procedures [used in the prison

---

that, under *Heck v. Humphrey*, a prisoner cannot bring a civil rights action challenging a disciplinary proceeding that results in a loss of good-time credits before successfully invalidating the disciplinary ruling); *Graves v. Gentry*, 05-CV-1478, 2006 U.S. Dist. LEXIS 46447, at *5-6 (E.D. Cal. July 10, 2006) ("In the present case, plaintiff seeks the invalidation of a disciplinary conviction that resulted in 120 days credit forfeiture.  If the court were to invalidate the conviction and order that the disciplinary [conviction] be expunged from plaintiff's records, as plaintiff requests, plaintiff would be entitled to the restoration of 120 days of credits.  Such relief is not available in a federal civil rights action."); *White v. Reddic*, 02-CV-0089, 2002 U.S. Dist. LEXIS 9079, at *4 (N.D. Tex. May 22, 2002) ("The [favorable-termination rule established by *Heck v. Humphrey*] would apply if plaintiff had lost goodtime as a result of the disciplinary case . . . ") [citations omitted].

[36]      *See, e.g., Edwards*, 520 U.S. at 643, 648 (holding that, even though the prisoner's "amended complaint did not request restoration of the lost [good-time] credits," the procedural defect that he claimed, i.e.,"deceit and bias" on the part of the hearing officer, if established, would necessarily imply the invalidity of the punishment the prisoner received, and, therefore, the favorable-termination requirement of *Heck v. Humphrey* applied); *Freeman v. Novak*, 06-CV-0715, 2006 U.S. Dist. LEXIS 89270, at *4 (W.D. Mich. Dec. 11, 2006) ("Plaintiff argues he is not requesting to receive good time back . . . and therefore, his request [for an order expunging his misconduct tickets] should not be denied.  However, Plaintiff has not argued that he did not lose good time credits, nor does he show that the misconduct hearing was overturned and invalidated.  Therefore, Plaintiff's claim, if successful, would demonstrate the invalidity of the duration of his confinement, as he lost one year of good time credits pursuant to the disciplinary conviction."); *Hernandez v. Davis*, 02-CV-5647, 2003 U.S. Dist. LEXIS 8270, at *3 (N.D. Cal. May 12, 2003) ("*Heck* [*v. Humphrey*] has been applied beyond cases which involve a challenge to the fact of [a court] conviction or to the sentence as opposed by a court.  For instance, it applies to disciplinary decisions that involve a loss of good time credits, as is the case here. . . . *Although plaintiff does not challenge the disciplinary decisions directly*, he does contend that he was an innocent party who was 'set up' by prison authorities.  That allegation is contrary to the conclusion at the disciplinary hearing that he was guilty of a rule violation.  Therefore, the length of his confinement would necessarily be implicated if he is successful here.") [citation omitted; emphasis added].

disciplinary hearing] were wrong, but not necessarily that the result was." *Edwards*, 520 U.S. at 645.  While the Supreme Court acknowledged that the "distinction between these two sorts of claims is clearly established in our case law," the Court explained that a prisoner's reliance on this distinction "disregards the possibility, clearly envisioned by *Heck* [*v. Humphrey*], that the nature of the challenge to the procedures could be such as necessarily to imply the invalidity of the judgment." *Id*.  In short, a claim that the procedures in a disciplinary hearing were wrong can necessarily imply the hearing's result was wrong.  At the very least (i.e., setting aside Plaintiff's express request for the "expungement of [his] disciplinary record"), this is what Plaintiff has alleged in his Complaint--no matter how much extraordinary leniency is afforded the reading of that Complaint.

For all of these reasons, I recommend that Plaintiff's Complaint be dismissed in its entirety with prejudice as barred by the favorable-termination requirement of *Heck v. Humphrey*.

**B.     Defendants' Alternative Ground for Dismissal: Qualified Immunity**

Because I have already found that an adequate ground exists upon which to base a recommendation that Plaintiff's Complaint be dismissed, I need not discuss in detail the merits of Defendants' alternative argument in favor of dismissal (i.e., that they are protected from liability as a matter of law by the doctrine of qualified immunity).  I will only report in a summary fashion that, after carefully considering the parties' arguments, Plaintiff's Complaint, the available record evidence, and the relevant law, I agree with Defendants' alternative argument in favor of dismissal, namely, that it was *objectively reasonable* for them to believe that their actions were lawful at the time they acted.  (Dkt. No. 13, Part 7, at 12 [Defs.' Memo. of Law].)

For example, among the ways that Plaintiff alleges that Defendants violated his

procedural due process rights (described above in Part I.A. of this Report-Recommendation) were the following: (1) Defendant Sullivan held his UDC Hearing in an untimely manner; and (2) Defendant Ryan deprived Plaintiff of his right to call witnesses at his DHO Hearing.

### 1.    Alleged Delay in Holding UDC Hearing

After an 89-day investigation of an assault that occurred on March 20, 2005, staff at FCI Ray Brook "became aware of [Plaintiff's involvement in that] incident" at 8:00 a.m. on Friday, June 17, 2005.[37]   Ten minutes later, Lt. Michael J. Cross signed an Incident Report charging Plaintiff with the assault.[38]   According to BOP regulations, "[e]ach inmate so charged is entitled to an initial hearing before the UDC, *ordinarily* held within three work days from the time staff became aware of the inmate's involvement in the incident."  28 C.F.R. § 541.15(b) [emphasis added].  BOP regulations further provide that "[t]his three work day period excludes the day staff became aware of the inmate's involvement in the incident, weekends, and holiday."  *Id.*

Here, the day that staff became aware of Plaintiff's involvement in the incident was Friday, June 17, 2005; and the following weekend occurred on Saturday, June 18, 2005, and Sunday, June 19, 2005.  As a result, the three-day time period started running at 12:00 a.m. on Monday June 20, 2005, and expired on 11:59 p.m. on Wednesday June 22, 2005.  Defendants'

---

[37]       (Dkt. No. 13, Part 4, at 4 [Ex. 1C to Ryan Decl., attaching Incident Report # 1352721, stating that "DESCRIPTION OF INCIDENT (Date: 06/17/2005. Time: 8:00 AM *Staff became aware of incident*)"] [emphasis added]; *see also* Dkt. No. 13, Part 5, ¶ 19 [Defs.' Rule 7.1 Statement, asserting that Ray Brook staff did not stop investigating the assault until 6/17/05, and supporting that factual assertion with accurate citation to record]; Dkt. No. 20, Plf.'s Rule 7.1 Response, ¶ 16 [admitted the fact asserted in Defendants' Paragraph 19].)

[38]       (Dkt. No. 13, Part 4, at 4 [Ex. 1C to Ryan Decl., attaching Incident Report # 1352721, reflecting that Lt. Michael J. Cross, as the "Reporting Employee," signed the Incident Report on "06/17/05 @ 8:10 a.m."].)

commenced Plaintiff's UDC hearing at 10:35 a.m. on Wednesday, June 22, 2005.[39]  Therefore,

even setting aside the fact that the three-work-day time period is one that need only "ordinarily"

be observed under 28 C.F.R. § 541.15(b), Defendants complied with that three-work-day time

period even under the strictest of applications.  Furthermore, even if Defendants had not so

complied with that regulatorily imposed deadline, no constitutional due process violation would

have occurred.[40]  This is especially true where (as here) there has been no factual allegation

plausibly suggesting that any prejudice resulted from the delay.[41]

---

[39]        (Dkt. No. 13, Part 4, at 6 [Ex. 1D to Ryan Decl., attaching SENTRY Incident
Report History, indicating that Plaintiff's UDC Hearing commenced on "06-22-2005" at "1035"
a.m.]; *see also* Dkt. No. 13, Part 5, ¶ 24 [Defs.' Rule 7.1 Statement, asserting referenced fact, and
supporting that factual assertion with accurate citation to record]; Dkt. No. 20, Plf.'s Rule 7.1
Response, ¶ 19 [admitted the fact asserted in Defendants' Paragraph 24]; Dkt. No. 20, Plf.'s Rule
7.1 Response, ¶¶ 18, 20 [admitted that Plaintiff was in a disciplinary hearing at 10:55 a.m. on
6/22/05].)

[40]        *See Davis v. Joslin*, 07-CV-0273, 2008 WL 525413, at *2 (S.D. Tex. Feb. 26,
2008) ("Assuming for purposes of this motion that petitioner is correct and the BOP violated its
own policy when it held the hearing six days after, rather than within three days after[,] prison
staff knew he was involved in the incident, petitioner still has not shown that his constitutional
rights were violated. . . .  [A] prison official's failure to follow the prison's own policies,
procedures or regulations does not constitute a violation of due process, if [the] constitutional
minima [set forth in *Wolff v. McDonnell*] are nevertheless met. . . .  Petitioner has not argued that
he did not receive the process he was due under *Wolff*.  His argument that his hearing was held a
few days late does not rise to the level of a constitutional violation.") [citation omitted]; *accord,
Smith v. Reese*, 05-CV-0036, 2008 WL 321631, at *6 (S.D. Miss. Jan. 9, 2008) [citing case];
*Wilson v. Wrigley*, 07-CV-0142, 2007 WL 2900216, at *1 (E.D. Cal. Oct. 4, 2007) [citing cases];
*Mayo v. Hogsten*, 06-CV-2241, 2007 WL 1521232, at *5 (M.D. Pa. May 23, 2007) [citing case];
*Kearse v. McKeon FCI*, 06-CV-0048, 2007 WL 1141550, at *6 (W.D. Pa. Apr. 156, 2007).

[41]        *See Williams v. Menifee*, 05-CV-4045, 2006 WL 2481823, at *5 (S.D.N.Y. Aug.
25, 2006) ("As an initial matter, it bears noting that Petitioner has not argued how, if at all, the
timing of the initial hearing prejudiced him.  In the absence of such arguments, the Court fails to
see how the alleged delay amounts to a violation of Williams' due process rights."); *accord,
Mayo*, 2007 WL 1521232, at *5; *Kearse*, 2007 WL 1141550, at *7.

As a result, I find that it was objectively reasonable for Defendants to believe that the

timing of Plaintiff's UDC Hearing complied with Plaintiff's constitutional due process rights.

### 2.     Alleged Denial of Right to Call Witness at DHO Hearing

For the sake of brevity, I will aside the question of whether Plaintiff has adduced

sufficient evidence to go to trial on the issue of whether he knowingly and voluntarily waived his

right to present witnesses at his DHO Hearing.  Defendants argue that, even assuming that

Plaintiff had no so waived his right to present witnesses, it was objectively reasonable for

Defendant Ryan not to permit Plaintiff to call the complainant on the assault charge (referred to

herein as "Inmate B") as a witness at the DHO Hearing, for two independent reasons: (1) the

presence of Inmate B (again, the *victim* of the alleged assault) at the DHO Hearing would have

"jeopardize[d] or threaten[ed] institutional[,] or an individual's[,] security," as provided in 28

C.F.R. § 541.16(c); and (2) Inmate B's "knowledge of the incident [was] adequately summarized

in the Incident Report and other investigative materials supplied to the DHO," as provided in 28

C.F.R. § 541.17(c).  (Dkt. No. 21, at 5-7 [Defs.' Reply Memo. of Law].)

I find that the record evidence supports this argument.  (*See* Dkt. No. 13, Part 4, at 10

[Ex. 1G to Ryan Decl., attaching Disciplinary Hearing Officer Report, showing, at Part "V," that,

among the evidence relied on by DHO at the Hearing was a summary of Inmate B's knowledge of

the incident]; Dkt. No. 13, Part 4, at 4 [Ex. 1C to Ryan Decl., attaching Incident Report, showing,

at Part "1," that, among the evidence relied on in the Incident Report was a summary of

statements made by Plaintiff to Inmate B during the incident, and the reason that Inmate B

believed Plaintiff had assaulted him].)  Moreover, Plaintiff has adduced no evidence

contradicting this evidence.  (*See generally* Dkt. No. 20 [Plf.'s Opp. Papers]; Dkt. No. 26 [Plf.'s

Sur-Reply Papers].)  Indeed, the evidence adduced by Plaintiff actually supports a finding that

Inmate B's knowledge of the incident was investigated and reflected in the investigative materials

available to the DHO.  (Dkt. No. 20, at 24 [Ex. 1D to Plf.'s Opp. Papers, attaching Government

Memorandum of 3/20/05, from Lt. D. Losey to Capt. J.D. Pena and SIS M.J. Cross, re: assault on

3/20/05, stating, *inter alia*, that following the assault, the victim was "escorted to the

Lieutenant[']s Office for questioning"].)

As a result, I find that it was objectively reasonable for Defendants to believe that

Defendant Ryan's refusal to permit Inmate B to testify at Plaintiff's DHO Hearing complied with

Plaintiff's constitutional due process rights.

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's

Complaint on the ground that, as a matter of law, Defendants are protected from liability by the

doctrine of qualified immunity.

### C.     Defendants' Second Alternative Ground for Dismissal: the Claims' Failure on the Merits

Because I have already found that adequate grounds exist upon which to base a

recommendation that Plaintiff's Complaint be dismissed, I need not, and do not, reach the merits

of Defendants' *second* alternative argument in favor of dismissal (i.e., that Plaintiff's claims fail

on the merits, based on an analysis of the undisputed record evidence) other than to report in a

summary fashion that, after carefully considering the parties' arguments, Plaintiff's Complaint,

the available record evidence, and the relevant law, I agree with Defendants' *second* alternative

argument in favor of dismissal for the reasons stated in their motion papers, and for the reasons

stated above in Part III.B.1.-2. of this Report-Recommendation.  (Dkt. No. 13, Part 7, at 12-16

[Defs.' Memo. of Law]; Dkt. No. 21, at 4-10 [Defs.' Reply Memo. of Law].)

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint on the ground that Plaintiff's claims fail on the merits, based on an analysis of the undisputed record evidence.

### D.      Third Alternative Ground for Dismissal: Misrepresentation to Court

As of the date he filed this action on May 12, 2006, Plaintiff had filed six other federal court actions relating to his imprisonment: (1) *Crum v. United States*, 97-CV-2108 (D. Md.) (habeas corpus action, filed 6/27/97); (2) *Crum v. Warden, U.S.P. Lompoc*, 01-CV-5854 (C.D. Cal.) (habeas corpus action, filed 7/3/01); (3) *Crum v. Dodrill*, 04-CV-0169 (D. N.J.) (prisoner civil rights action, filed 1/20/04; dismissed on 8/8/05 pursuant to settlement); (4) *Crum v. Lindsay*, 06-CV-0481 (M.D. Pa.) (habeas corpus action, filed 3/6/06); (5) *Crum v. Dupell*, 06-CV-0512 (N.D.N.Y.) (prisoner civil rights action, filed 4/17/06); and (6) *Crum v. Marini*, 06-CV-0513 (N.D.N.Y.) (prisoner civil rights action, filed 4/17/06).[42]

Plaintiff failed to disclose all of these cases in Paragraph 5 of his sworn Complaint, where he checked the box labeled "Yes" next to the question "Have you ever filed any other lawsuits in any state or federal court relating to his imprisonment?" but then listed only one such lawsuit (i.e., *Crum v. Dodrill*, 04-CV-0169 [D. N.J.]) in response to the form complaint's directive: "If your answer to 5(a) is YES you must describe any and all lawsuits, currently pending or closed, in the space provided on the next page."  (Dkt. No. 1, ¶ 5 [Plf.'s Compl.].)

Generally, such information is material in prisoner civil rights actions since it enables the

---

[42]      After he filed this action, Plaintiff filed two other federal court actions: (1) *Crum v. Olsen*, 06-CV-0250 (W.D. Pa) (prisoner civil rights action, filed 10/24/06); and (2) *Crum v. Lindsay*, 06-CV-2478 (M.D. Pa.) (prisoner civil rights action, filed 12/28/06).

Court to determine one or more of the following issues: (1) whether any of the issues in the action have been previously litigated and decided (for purposes of the doctrines of res judicata and collateral estoppel); (2) whether the plaintiff had, prior to being granted *in forma pauperis status* in this action, earned "three strikes" for purposes of 28 U.S.C. § 1915(g); (3) whether the plaintiff had a record of frivolous litigation sufficient to warrant a "bar order" (i.e., an order barring him from litigating further in that court without meeting certain preconditions) pursuant to 28 U.S.C. § 1651(a); and (4) whether the plaintiff's litigation experience was so extraordinary that it effectively dispenses with the need to afford him special solicitude.

While a plaintiff is under no duty to provide this information in order to state an actionable civil rights claim, here, Plaintiff *chose* to answer a question on a form complaint calling for such information, and *swore* to the truthfulness of his answer.  There is simply no excuse for making such a sworn misrepresentation to the Court.  District Judges from this Court have indicated a willingness to sanction *pro se* litigants for making such misrepresentations.  *See, e.g., Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *13-14 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting, on *de novo* review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *6 & n.32 (N.D.N.Y. July 11, 2007) (McAvoy, J., adopting, on plain-error review, Report-Recommendation by Lowe, M.J., premised on alternative ground that the plaintiff should be sanctioned for making a material misrepresentation to the Court in his complaint) [collecting cases].  I have considered less drastic sanctions and have found them to be inadequate to curb this particular intentional and egregious litigation abuse.

25

For these reasons, I recommend that, in the alternative, the Court dismiss Plaintiff's Complaint *sua sponte*, under Fed. R. Civ. P. 11, as a sanction for making a sworn misrepresentation to the Court.

**ACCORDINGLY**, it is

**RECOMMENDED** that Defendants' motion to dismiss for failure to state a claim, or, in the alternative, their motion for summary judgment (Dkt. No. 13), be **GRANTED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Svcs.*, 892 F.2d 15 [2d Cir. 1989]); 28 U.S.C. § 636(b); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: March 17, 2008
      Syracuse, New York

George H. Lowe
United States Magistrate Judge